UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 26 CR ___125

JASMINE COOPER,

[18 U.S.C. §§ 1028A(a)(1), 1347, & 2(a)]

Defendant.

---

# INFORMATION

---

**THE UNITED STATES CHARGES THAT:**

1. At all times material to this information:

a. Defendant JASMINE COOPER owned and operated Bundle of Love Prenatal LLC ("BOL").

b. BOL was a Prenatal Care Coordination ("PNCC") and Childcare Coordination ("CCC") company, which billed Wisconsin Medicaid ("Medicaid") for services purportedly provided to pregnant women and mothers in Milwaukee, Wisconsin.

## The Wisconsin Medicaid Program

c. Medicaid was a program jointly funded by the federal government and participating states to provide health insurance to indigent families with dependent children and to aged, blind, and disabled individuals whose income and resources are insufficient to meet the cost of medical services. 42 U.S.C.

§§ 1396, et seq. (the "Medicaid Act").

d. Wisconsin participates in the Medicaid program ("Wisconsin Medicaid"). In Wisconsin, the Medicaid program was established pursuant to Wisconsin Statutes Chapter 49 and its administrative regulations. The United States pays for a portion of the program.

e. To participate in the Medicaid program, a provider must enter into a written Medicaid Provider Agreement (the "Provider Agreement") with the Wisconsin Department of Health Services in which the provider certifies that every claim submitted is truthful and that the services billed have been furnished in accordance with state and federal law. The Provider Agreement also requires a certification that the provider has not offered, paid, or received anything of value in return for the referral or provision of Medicaid-covered services.

f. The Medicaid Provider Agreement detailed that the provider would be governed by the rules and regulations set forth in the ForwardHealth Online Handbook ("Handbook").

g. The PNCC and CCC benefits were governed by rules and regulations set forth in the Handbook and updates issued through the ForwardHealth Portal at www.forwardhealth.wi.gov.

<u>The PNCC Benefit and PNCC Handbook</u>

h. The PNCC benefit is intended "to improve birth outcomes among women who are deemed at high risk for poor birth outcomes."

i. The benefit was created, in part, because Wisconsin has historically

had the highest rate of infant mortality for African Americans in the nation.

j. PNCC services are supposed to help ensure that women at high risk: (1) are identified as early as possible in their pregnancy; (2) receive individual psychosocial support and services; (3) receive early and continuous prenatal care services; (4) receive necessary health and nutrition education; (5) are referred to available community services, as appropriate; and (6) receive assistance in accessing and obtaining needed health and social services.

k. PNCC service providers were required to bill only for services actually provided and only for the actual time spent providing covered services.

The CCC Benefit and CCC Handbook

l. The CCC benefit was added as an extension of the PNCC benefit. Its purpose was to "promote positive parenting, improve child health outcomes, and prevent child abuse and neglect." Whereas the PNCC benefit was directed toward pregnant women, the CCC benefit was directed toward women with a young child or children.

m. The benefit explicitly did not cover direct services.

n. CCC service providers were supposed to focus on: (1) improving family functioning; (2) improving parenting skills and positive parenting outcomes; (3) increasing members' understanding of infant and child development; (4) increasing members' access to and appropriate use of the health care delivery system; (5) improving employment outcomes; (6) encouraging planned pregnancies; and (7) improving future birth outcomes.

## The Scheme

2. Beginning by at least July 2020, and continuing through December 2022, in the State and Eastern District of Wisconsin,

**JASMINE COOPER**

knowingly and willfully executed and attempted to execute a scheme to defraud a health care benefit program, namely Wisconsin Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of such program, in connection with the delivery of and payment for health care benefits, items, and services.

3. COOPER executed the scheme in the following ways:

a. As part of the scheme, COOPER submitted false claims to Wisconsin Medicaid with respect to her own clients, for whom she was the assigned care coordinator, knowingly misstating the duration, frequency, date, and nature of the services provided.

b. COOPER instructed her employees to falsify billing submissions to Wisconsin Medicaid by knowingly misstating the duration, frequency, date, and nature of the services provided.

c. COOPER incentivized her employees to inflate their billings to Wisconsin Medicaid by tying their compensation to the amount BOL billed Wisconsin Medicaid.

d. COOPER, and other individuals she directed and controlled, submitted claims for payment to Medicaid based on false and fraudulent

statements.

e. COOPER, and other individuals she directed and controlled, submitted claims for payment to Medicaid based on services never rendered.

f. COOPER, and other individuals she directed and controlled, submitted claims for payment to Medicaid for dates that preceded the date on which the client met a representative of BOL or enrolled in the program.

4. As part of this scheme, COOPER submitted and caused to be submitted bills totaling over $5,800,000, which contained false and fraudulent statements, and which caused Wisconsin Medicaid to pay her over $5,400,000 to which she was not entitled.

## COUNT ONE

(Health Care Fraud)

**THE UNITED STATES FURTHER CHARGES THAT:**

5. On or about May 21, 2021, in State and Eastern District of Wisconsin,

**JASMINE COOPER,**

for the purpose of executing the scheme described above, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following materially false and fraudulent claims, which falsely represented the nature of her company's interaction with the member, falsely represented that covered services were provided, and falsely represented the amount of time spent providing covered services. Namely, Cooper caused the submission of claims to Wisconsin Medicaid asserting that a representative from her company spent two hours providing covered services to P.P. on 22 occasions between January 18, 2021, and April 24, 2021, and that her company was owed $2,112 in payment as a result, when, in fact, P.P. had not enrolled with BOL before May 2021 and had not received any covered services.

In violation of Title 18, United States Code, Sections 1347 and 2(a).

## COUNT TWO
(Aggravated Identity Theft)

**THE UNITED STATES FURTHER CHARGES THAT:**

6. On or about May 21, 2021, in the State and Eastern District of Wisconsin,

**JASMINE COOPER**

knowingly possessed and used, without lawful authority, a means of identification of another person, specifically the name, date of birth, and Wisconsin Medicaid ID number of P.P., during and in relation to the felony offense of health care fraud, in violation of 18 U.S.C. § 1347, as charged in Count One of this Information, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE NOTICE

1. Upon conviction of the offense alleged in Count One of this Information, the defendant, JASMINE COOPER, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from the proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, a money judgment for a sum of money equal to the amount of proceeds obtained as a result of the health care fraud.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

Dated: 6/8/2026

Kate Biebel

KATE M. BIEBEL
Assistant United States Attorney