UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 26-CR- 125

JASMINE COOPER,

Defendant.

---

# PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Kate M. Biebel and Julie F. Stewart, Assistant United States Attorneys, and the defendant, Jasmine Cooper, individually and by attorney Kathleen M. Quinn, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2. The defendant has been charged in a two-count information, which alleges violations of Title 18, United States Code, Sections 1028A and 1347.

3. The defendant has read and fully understands the charges contained in the information. She fully understands the nature and elements of the crimes with which she has been charged. Those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the counts set forth in full in Attachment A.

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offenses described in Attachment A. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

> In July 2020, Jasmine Cooper opened a prenatal-and-childcare coordination agency in Milwaukee, Wisconsin called Bundle of Love Prenatal LLC (BOL). Cooper co-owned the company along with C.G., her business partner. BOL was supposed to provide Prenatal Care Coordination (PNCC) and Childcare Coordination (CCC) services in compliance with the ForwardHealth rules and regulations as set forth the Wisconsin State statutes and administrative code, and in the ForwardHealth Online Handbook. The time a provider spent providing those services, when administered to qualifying members, were reimbursable by Wisconsin Medicaid. When she opened BOL, Cooper signed a Wisconsin Medicaid Provider Agreement. In that Agreement, Cooper agreed to submit only accurate and truthful claims that complied with the terms of the PNCC and CCC Online Handbooks published by ForwardHealth. Cooper also agreed that she would not offer or pay any kickbacks or renumeration in exchange for referrals to services covered by Medicaid. After opening her agency, Cooper immediately violated those promises and engaged in a scheme to defraud Wisconsin Medicaid for her own personal gain.
>
> As part of the scheme, Cooper told her employees (care coordinators) to document on their billing paperwork that each of their purported visits with clients lasted two hours, regardless of how much time (if any) the employee actually spent with the client. Cooper also instructed employees to document that they always spent the maximum number of reimbursable hours per month assisting each client, which for members receiving CCC services was ten hours. Cooper knew that neither she, nor C.G., nor the other BOL employees were actually spending two hours per visit with their clients. In fact, most interactions between BOL employees and clients were brief and consisted primarily of the BOL employee providing the client with baby supplies (such as diapers and wipes) or money. Cooper used the false documents generated by her employees to submit bills to Wisconsin Medicaid for payment. Cooper incentivized her employees to inflate their hours in this way by tying their compensation to the number of hours they (purportedly) worked for clients.
>
> For potential clients who had babies who were more than eight weeks old, and who would therefore not qualify to sign up for CCC services, Cooper told her employees that they could back-date the client's enrollment paperwork to a date before the baby turned eight weeks old so that the client would qualify for services. Cooper also told her employees to fabricate care plans for the months between the purported enrollment date and the actual enrollment date, to paper the file. Cooper then submitted claims for purported visits that she said took place between the client and the employee all the way

back in time to the back-dated enrollment date. Cooper knew these claims were false and fraudulent because they asserted that a BOL employee provided services to a qualifying client before (sometimes many months before) the client was even enrolled. Cooper submitted these back-dated claims using the means of identification of other people without lawful authority during and in relation to her commission of health care fraud.

In an effort to hide the company's practice of back-dating client enrollment paperwork and billing for purported services before a client was actually enrolled, Cooper also instructed employees to back-date their own employment applications or contracts to dates prior to when they actually started working with the company. Cooper had her employees do this so that, on paper, it appeared as though the employee was in fact employed by BOL, and therefore able to provide services, on the dates to which the company was back-dating claims.

Even for claims submitted after a client's enrollment with BOL, it was Cooper's practice to submit claims that falsely asserted that either she or her employees spent two hours per visit providing services to a client even though Cooper knew that neither she nor any employee had provided two hours of covered services. For a majority of the members enrolled with BOL, Cooper and her employees provided nothing more than occasional deliveries of baby items or money—an incentive to keep the member signed up with the company, so Cooper could continue to submit bills to Medicaid on the member's behalf. Cooper knew that directly supplying baby items or money was not a covered service for which she could bill Medicaid. Despite that, Cooper willfully and knowingly submitted bills to Medicaid falsely asserting that she or an employee provided covered services. Cooper was consequently paid by Medicaid for providing services she knew she and her employees did not provide.

With respect to Member P.P., Cooper submitted, or caused to be submitted, a false claim to Medicaid on May 21, 2021. That claim falsely asserted that a representative from BOL spent two hours providing covered services to P.P. on twenty-two occasions between January 18, 2021, and April 24, 2021, and that BOL was owed $2,112 in payment as a result. This claim was false and fraudulent because, in fact, P.P. first had contact with a BOL employee in May 2021; she was not enrolled with BOL and did not receive any covered services from BOL before May 2021. The May 21, 2021, claim for services purportedly provided to P.P. from January through April 2021 was the first claim that BOL submitted for services to P.P., and subsequent claims related to P.P. were submitted in the same month the services were purportedly provided. As detailed above, Cooper permitted her employees to back-bill fabricated services for new clients. She knew that when an employee prepared paperwork for a new client that included several months' worth of notes (not just notes for the current month), as happened with P.P., the notes for the months predating the month of submission were back-dated and false. Before submitting the claim for services purportedly rendered to P.P. from January through April 2021, Cooper did not verify that P.P. had in fact received services from an employee of her company. It was not her practice to conduct such verifications under these circumstances because she knew back-dated claims were necessarily fabricated, and that no services were actually provided. This claim is a representative example of

Cooper's own practice of back-dating, and allowing care coordinators to back-date, claims for services not actually rendered. This claim related to the delivery of health care benefits and services that Wisconsin Medicaid would find material and the claim was false. Wisconsin Medicaid was defrauded by the claim.

Between July 2020 and December 2022, BOL billed Medicaid $5,862,336.00 and was paid $5,420,109.73. Throughout the scheme, Cooper was aware that the PNCC and CCC benefit was intended to fund the provision of prenatal care coordination and childcare coordination services that would improve birth outcomes for babies of at-risk mothers. Cooper was aware that the money she was stealing from the program was supposed to be used to help pregnant women and young mothers find resources related to prenatal medical care, mental healthcare, and improved parenting.

In signing this agreement, Cooper acknowledges that by committing this fraudulent scheme she enriched herself at the expense of the community that she was supposed to be helping, and that she thereby reduced the resources available to mothers and babies at risk for negative birth outcomes, including infant death.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: as to count one, ten years of imprisonment and a $250,000 fine, and as to count two, a two-year mandatory period of imprisonment. Each count also carries a mandatory special assessment of $100, and count one carries a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of health care fraud as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, there was a scheme to defraud a health care benefit program, as charged in the information; and
>
> Second, the defendant knowingly and willfully carried out and attempted to carry out the scheme; and
>
> Third, the defendant acted with the intent to defraud the health care benefit program; and
>
> Fourth, the scheme involved a materially false or fraudulent pretense, representation, or promise; and
>
> Fifth, the scheme was in connection with the delivery of or payment for health care benefits, health care items, and health care services.

The parties understand and agree that in order to sustain the charge of aggravated identity theft, as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant committed the felony offense of health care fraud;
>
> Second, during and in relation to the health care fraud, the defendant knowingly transferred, possessed, or used a means of identification; and
>
> Third, the defendant did so without lawful authority.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that her attorney has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## **Sentencing Guidelines Calculations**

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## **Relevant Conduct**

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

**Base Offense Level**

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2).

**Specific Offense Characteristics**

17. The parties agree to recommend to the sentencing court that an 18-level increase for loss in excess of $3,500,000 under Sentencing Guidelines Manual §2B1.1(b)(1)(J) and a 2-level increase for loss to a government program in excess of $1,000,000 under 2B1.1(b)(7)(B) is applicable to the offense level for the offense charged in Count One.

**Role in the Offense**

18. Pursuant to Sentencing Guidelines Manual § 3B1.1, the parties agree to recommend to the sentencing court that a 4-level increase be given for an aggravating role in the offense, as the defendant was an organizer and leader of a criminal activity that involved five or more participants and was otherwise extensive.

**Acceptance of Responsibility**

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

**Sentencing Recommendations**

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence of no more than 30 months' incarceration on Count One, to run consecutive to 24 months' incarceration on Count Two, for a total maximum recommendation of 54 months' incarceration.

**Court's Determinations at Sentencing**

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

**FINANCIAL MATTERS**

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of

Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. [The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

## Restitution

28. The defendant agrees to pay restitution in the amount of $5,420,109.73. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## Forfeiture

29. The defendant agrees that she obtained $5,420,109.73 from Wisconsin Medicaid as a result of the health care fraud offense to which she is pleading guilty and that those funds are forfeitable proceeds of the offense, as described in the forfeiture notice of the information. The defendant agrees to the forfeiture of those funds, in the form of a money judgment in an equal

amount, and to the immediate entry of a preliminary order of forfeiture. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

**DEFENDANT'S COOPERATION**

30. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The parties acknowledge, understand, and agree that the recommendation stated above in paragraph 22 is based on the cooperation provided by the defendant as of the date of the entry of this plea agreement. The parties acknowledge, understand, and agree that if the defendant provides additional substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may additionally recommend to the sentencing court a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

**DEFENDANT'S WAIVER OF RIGHTS**

31. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

32. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that she will be adjudicated guilty of the offenses to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her conviction or sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

**Further Civil or Administrative Action**

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against

the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

**<u>MISCELLANEOUS MATTERS</u>**

37. The defendant agrees not to work for, or operate, any business which submits bills to government health care programs until the termination of her supervised release.

38. In connection with the defendant's plea of guilty, the defendant, in consultation with counsel, has chosen not to request discovery materials pursuant to Fed. R. Crim. P. 16 ("Rule 16 Material"). The defendant understands that if not for entering this plea of guilty to the information, and instead the defendant was charged by indictment, the Government would be required to produce Rule 16 Material, and would further be required to produce material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Fed R. Crim. P. 5(f), and, if the defendant proceeded to trial, impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and Jencks Act material. The defendant acknowledges that she has not and will not receive such information because she has decided to plead guilty, waives the right to this information, and agrees not to withdraw her plea or to attack her conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any such information, apart from any information establishing the factual innocence of the defendant.

**<u>GENERAL MATTERS</u>**

39. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

40. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

41. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

42. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

**Further Action by Internal Revenue Service**

43. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

**EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

44. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal or state or local offense punishable by a term of imprisonment exceeding one year (other than a petty traffic offense), or violates a material term of the plea agreement. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the

applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

**VOLUNTARINESS OF DEFENDANT'S PLEA**

45. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/31/2026

JASMINE COOPER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 6/1/26

KATHLEEN M. QUINN
Attorney for Defendant

For the United States of America:

Date: 6/8/2026

KATE M. BIEBEL
JULIE F. STEWART
Assistant United States Attorneys